## TAMBLYN et al. v. JOHNSTON.

(Circuit Court of Appeals, Eighth Circuit. November 2, 1903.)

No. 1,854.

1. WRONGFUL ATTACHMENT—EXCESSIVE LEVY—MALICE.

When a plaintiff, having a legitimate demand against a defendant, maliciously, and with intent to injure the defendant, rather than to collect the debt, brings action for a sum largely in excess of what he knows to be justly due, and attaches property also of much larger value, thereby inflicting on the defendant special damages, such as do not ordinarily result from the institution of a civil suit, an action on the case may be maintained against him therefor, to recover for the malicious abuse of civil process.

2. DEMURRER TO EVIDENCE—WAIVER BY INTRODUCTION OF EVIDENCE.

A demurrer to the evidence is waived by the defendant by the introduction of evidence in defense after the demurrer is overruled.

3. WRONGFUL ATTACHMENT—GROSS OVERSTATEMENT OF CLAIM—PRESUMPTION OF MALICE.

Where the plaintiff, in his affidavit for an attachment, knowingly and grossly overstates the amount of his claim, such action warrants the inference of malice.

4. SAME—ACTION FOR DAMAGES—INSTRUCTIONS.

In an action for wrongful attachment, it was shown that defendants commenced an action in attachment against plaintiff as a nonresident, alleging in the affidavit filed that the amount due them was $5,100, although they had the same day received, to apply on such debt, the sum of about $2,900. It further appeared that such credit was in fact made as of a previous date on another note of plaintiff, not due, and which defendants did not then own, and on which they were not liable. *Held,* that such fact was properly submitted for consideration by the jury on the question of defendants' good faith or malicious intent in suing out the attachment.

**5. SAME—ESTOPPEL.**

Defendants sued out an attachment against plaintiff in a foreign ju-risdiction, and garnished a stockyards company which had possession, as plaintiff's bailee, of certain stock in transit; such stock being then sold by the garnishee. *Held*, that plaintiff was not estopped to maintain an action for wrongful attachment, on the ground that it was procured for a largely excessive amount, by the fact that after he had paid the debt he stipulated for the discharge of the garnishee, and that judgment for costs might be entered against him in the attachment suit.

**6. SAME—DAMAGES—EVIDENCE OF LOSS OF CREDIT.**

In an action for wrongful attachment, evidence that, because of the attachment in a foreign jurisdiction, plaintiff was refused a loan by a bank, which it had previously promised him, was admissible on the ques-tion of damages by loss of credit.

**7. REVIEW ON ERROR—EXCESSIVE VERDICT FOR DAMAGES.**

The Circuit Court of Appeals cannot reverse a judgment on a writ of error, where no error of law appears on the face of the record, merely because the damages awarded by the jury seem to be too large.

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Missouri.

This action was brought by Lyt T. Johnston, the defendant in error, against George S. Tamblyn and Robert L. Tamblyn, doing business as partners under the name of Tamblyn & Tamblyn, the plaintiffs in error, and resulted in a verdict in favor of the plaintiff in the lower court. The original petition was amended by leave of court during the progress of the trial, and the trial must be regarded as having taken place under the amended pleadings. The amended petition recited, in substance, that the plaintiff was engaged in the business of breeding, raising, buying, and selling cattle at his ranches in Texas and elsewhere; that the defendants were engaged in the live stock commission business in Kansas City, Mo.; that on July 12, 1900, the plain-tiff was indebted to the defendants in the sum of about $5,000, the exact amount of which indebtedness was then unknown; that on said day he exe-cuted a note in the sum of $5,100, due 90 days after date, with interest from maturity, under an agreement that whatever difference, if any, there should be between the true amount of his indebtedness, when ascertained, and the amount called for by the face of the note, should be adjusted by the parties when the exact amount of the indebtedness was ascertained; that it was subsequently ascertained that the true amount of his indebtedness was $4,870, the difference between the true amount of his indebtedness and the face of the note being $230; that on November 2, 1900, he paid on account of said note, and the defendants accepted, the sum of $2,895.89; that, after the payment of said $2,895.89 upon his indebtedness, he was the owner and in possession of 333 head of cattle, to wit, calves, which he had shipped and were then in transit from his ranch in Texas to the town of Alexis, in the state of Illinois; that their market value on the day they should have ar-rived at their destination was $20 per head, aggregating $6,660; and that he had already arranged for their sale at Alexis, all of which the defendants well knew.

The facts so recited in the petition were followed by the following allega-tion: "That when said cattle so in transit from Texas to said Alexis arrived at East St. Louis, in Illinois, and were placed in the temporary possession of the St. Louis National Stockyards Company at that place as the bailee of plaintiff, and at a time when defendants well knew that plaintiff's indebted-ness to them did not exceed said balance of $1,974.11, to wit, on the 3d day of November, 1900, said defendants, for the purpose of vexing and harassing plaintiff, and ruining him in his good name, trade, and business, did will-fully, wrongfully, wantonly, maliciously, and without probable cause there-for, (1) institute in the city of East St. Louis, in the county of St. Clair and

---

¶ 6. See Attachment, vol. 5, Cent. Dig. § 1385.

state of Illinois, which said city court was then and there a court of general jurisdiction, their suit by attachment against this plaintiff, styled, 'Tamblyn & Tamblyn against L. T. Johnston;' (2) sue out of said city court a writ of attachment and garnishment in said cause against the property of this plaintiff then in said state of Illinois; (3) cause to be seized and attached, under and by the service of the garnishment side of said writ upon said St. Louis National Stockyards Company, then holding said cattle as plaintiff's bailee as aforesaid, all of plaintiff's said cattle, of the value aforesaid; and (4) cause and procure said National Stockyards Company to sell and dispose of said cattle, of the value of $6,660 as aforesaid, which it did on the 5th day of November, 1900, at and for the sum of $3,743.41." The petition further averred, in substance, that, by reason of the wrongful and malicious acts of the defendants in thus suing out and causing the levy of said writ of attachment and garnishment, the plaintiff had been compelled to employ counsel to represent him in the protection of his rights, and had sustained damage on that and other accounts in a large sum of money, for which he prayed judgment.

The facts which the evidence introduced at the trial tended to establish are these: Johnston, the plaintiff below, was a cattle raiser and breeder of cattle residing in Texas. The defendants Tamblyn were cattle commission men doing business in Kansas City, Mo. On November 3, 1900, Johnston had executed a note for $12,523, due December 18, 1900, which the Tamblyns had sold to a third party, without recourse, and another note, for $300, due the same day. The Tamblyns held another note against Johnston, in the sum of $5,100, which fell due October 9, 1900, and was entitled to a credit in the sum of $230. All of these notes were secured by a mortgage on a large herd of cattle in Johnston's possession in the state of Texas, which was worth about $50,000. Johnston made a shipment of 135 or 138 head of cows and bulls to the Tamblyns at East St. Louis, Ill., to be sold, and the proceeds applied on the note for $5,100. These cattle arrived in East St. Louis on the morning of November 3d, and were sold in the stockyards between 11 and 1 o'clock of that day; the net proceeds realized from the sale, and applicable to the payment of the note for $5,100, being $2,895.89. At the same time Johnston shipped six car loads of calves to Alexis, Ill., to his brother-in-law, which arrived in East St. Louis on the same morning with the other cattle. The calves were not covered by the Tamblyn mortgage, but the cows and bulls were. About 9 o'clock on the morning of November 3d, the defendants Tamblyn began an action of attachment against Johnston in the city court of East St. Louis, St. Clair county, Ill., on the ground that he was a nonresident of the state; alleging in their affidavit for attachment that, after allowing all just credits and set-offs, he was indebted to them in the sum of $5,100. A writ of attachment was issued, which was levied upon the calves then in the possession of the National Stockyards Company, by garnishing it as bailee of the calves. At the time the defendants instituted this suit of attachment, they knew that the cows and bulls were in the hands of their consignee, and were to be sold, and the proceeds applied on the note for $5,100. They did not at the time own the note for $12,523, which was not due until December 18, 1900; having sold it, without recourse, to the Boston & Kansas City Brokerage Company. After the levy of the attachment in the manner aforesaid, the calves were sold at the stockyards, and the money realized therefor remained in the hands of the stockyards company for some time. After the levy of the attachment the Tamblyns pressed Johnston for the payment of the $12,000 note at maturity, as if they were the owners of the same, although they did not own it, and were not liable thereon. Although Johnston applied to them to extend the time for the payment of the note, supposing them to be the owners thereof, they declined to do so, and urged him to release his claim to the proceeds of the calves, then in the hands of the garnishee, so that it could be applied on the indebtedness which they held. The attachment suit pursued its regular course, publication having been made to bring in the defendant in that suit, until January 7, 1901, when, in pursuance of a stipulation which was filed, a judgment was rendered in favor of the Tamblyns and against Johnston for costs; the judgment entry reciting that the debt had been paid since the suit was brought, and reciting, further,

that the stockyards company be discharged as garnishee. The stipulation in pursuance of which such judgment was entered was in the following form: "The debt sued on in the above-styled cause having been paid off since the institution of this suit, it is. agreed that plaintiffs have judgment for their costs, and that the garnishee, the St. Louis National Stockyards Company, be discharged." About the same date, or prior thereto, the $12,000 note was sent down to Texas for collection, and was there paid by Johnston. When thus paid, it was credited as of November 1, 1900, with the proceeds of the sale of 135 head of cows and bulls; the credit indorsed thereon being in the following form: "By 138 or 137 cattle shipped to St. Louis, Illinois, sold in yard there, $2,895.89." The other notes, for $5,100 and $300, respectively, bore no credit at all, but were marked "Paid."

To reverse the judgment which was rendered against them on a trial before a jury in the lower court, the defendants have brought the case to this court on a writ of error.

L. H. Waters and George F. McNulty (Charles P. Wise, on the brief), for plaintiffs in error.

K. R. Craig (H. C. McDougal, Frank P. Sebree, and S. C. Price, on the brief), for defendant in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The complaint which was filed in the Circuit Court, the substance of which is given above, states a good cause of action for the malicious abuse of civil process, as distinguished from an ordinary action for malicious prosecution. The gist of the complaint is that the defendants below, who are the plaintiffs in error here, well knowing that the plaintiff below was only indebted to them in the sum of $1,974.11, commenced an action against him by attachment in a foreign jurisdiction, charging the indebtedness to be $5,100, and causing a levy to be made on property of the plaintiff then in transit which was of the value of $6,600, and that they did so "wrongfully, wantonly, and maliciously," for the purpose of injuring the plaintiff in his good name and credit. We entertain no doubt that the complaint discloses a legal wrong, for which an action will lie. According to the great weight of authority and reason, no action will generally lie for the institution and prosecution of a civil suit, even if it is brought and prosecuted maliciously and without any probable cause. In such cases the liability of the plaintiff for the costs which he thereby incurs is deemed a sufficient penalty for the wrong. But when the plaintiff, who brings such an action, procures the arrest of the defendant or the seizure of his property under a writ of attachment, and thereby inflicts special damages, such as do not ordinarily result from the institution of a civil suit, a wrong is committed, on account of which the law will afford redress in an action on the case. So, when a plaintiff, having a legitimate demand against a defendant for a small amount, sues him for a sum largely in excess of what he knows to be justly due, and causes an attachment to be levied on property of the defendant of great value, to secure such excessive demand, and does so maliciously, with intent to injure the defendant, rather than to collect what is justly due, a wrong is committed, of which the courts

will take cognizance. The law to this effect is comparatively well settled, and it commends itself to our judgment as reasonable and just. Austin v. Debnan, 3 Barn. & Cressw. 143; Savage v. Brewer, 16 Pick. 453, 28 Am. Dec. 255; Zinn v. Rice, 154 Mass. 1, 27 N. E. 772, 12 L. R. A. 288; Brand v. Hinchman, 68 Mich. 590, 36 N. W. 664, 13 Am. St. Rep. 362; Mayer v. Walter, 64 Pa. 283; Wetmore v. Mellinger et al., 64 Iowa, 741, 18 N. W. 870, 52 Am. Rep. 465; Potts v. Imlay, 4 N. J. Law, 330, 334, 7 Am. Dec. 603; Bitz v. Meyer, 40 N. J. Law, 252, 29 Am. Rep. 233; Marx v. Strauss (Ala.) 9 South. 818, 820; Stiff v. Fisher (Tex. Sup.) 22 S. W. 577; Scovill v. Glasner, 79 Mo. 449, 460. The view last expressed, that the amended complaint on which the case was tried stated a good cause of action for the malicious abuse of civil process, disposes of some of the assignments of error, and nothing further need be said in relation thereto. For example, it disposes of the claim that the trial court erred in refusing to sustain a motion for judgment on the pleadings, that it erred in overruling defendants' objection to the introduction of any evidence under the pleadings, that it erred in overruling the defendants' demurrer to the evidence at the close of the plaintiff's case, and that it erred in refusing to direct a verdict for the defendants. Inasmuch as the amended complaint on which the case was eventually tried stated a good cause of action, and there was evidence tending to support its allegations, the assignments of error last mentioned are untenable. Besides, the defendants below lost the benefit of their demurrer to the evidence, which was interposed at the close of the plaintiff's case, because they did not stand upon the demurrer when it was overruled, but proceeded to introduce their testimony, thereby waiving the benefit of the demurrer. Union Pacific Railway v. Daniels, 152 U. S. 684, 14 Sup. Ct. 756, 38 L. Ed. 597. Moreover, the record does not disclose that a peremptory instruction to find for the defendants was asked by them at the conclusion of all of the evidence, for which reason the case was necessarily submitted to the jury for its decision. Hartford Life Ins. Co. v. Unsell, 144 U. S. 439, 451, 12 Sup. Ct. 671, 36 L. Ed. 496. We pass, therefore, to the consideration of other questions on which the right to a reversal must depend, and those are whether the court below gave any erroneous instructions to the jury which were duly excepted to at the time, and whether material errors were committed in the admission or rejection of testimony as to which exceptions were properly saved. With respect to the charge of the trial court, the errors assigned are as follows: That the court erred in submitting the case to the jury on issues not raised by the pleadings; that the court erred in submitting to the jury any question of damage to the plaintiff's credit or reputation; that the court erred in charging the jury that, if the affidavit for the attachment stated the debt sued for at a sum greater than the sum in fact due, the defendants were liable; that the court erred in charging the jury that they might infer that the prosecution was malicious from the fact that the affidavit stated the debt at a greater amount than was due; that the court erred in charging the jury that, if the debt due defendants was less than the amount stated in the affidavit, the attachment suit was commenced without probable cause;

and that the court erred in charging the jury that any inference of bad faith might be drawn from the fact that the note for $12,523 was credited with the proceeds of the sale of certain cattle.

We observe, in the first place, that none of these assignments are made in fair compliance with rule 11 of this court, since they do not set out totidem verbis the part of the charge to which the respective assignments are addressed, as the rule requires, but only the effect of the charge, as counsel for the plaintiffs in error construe it. This method of assigning errors to a lengthy charge, besides being in plain violation of the aforesaid rule, is inconvenient, and imposes an unnecessary burden on an appellate court, in that it compels it to examine an entire charge critically to ascertain to what portions thereof the assignments are addressed, and whether the substance of what was said is correctly stated in the assignments. This is a task which frequently imposes on an appellate court considerable unnecessary labor and care. But notwithstanding the violation of the rule, which would justify us in ignoring the assignments in question, we have looked through the entire charge, to see how far the assignments are tenable. The result is that we do not find in the charge anything to support the assignment that the court submitted the case to the jury upon issues not raised by the pleadings. On the contrary, the issue submitted to the jury was one which was fairly raised by the amended complaint and the answer thereto. Nor do we find that the court erred in submitting to the jury any question of damage to the plaintiff's credit or reputation. In the progress of the trial it did permit evidence to be introduced tending to show that the plaintiff's credit had been affected by the wrongful act complained of, and that, in our opinion, was a legitimate item of damage, considering the character of the action. We do not find that the trial judge charged the jury that, if the affidavit for the attachment stated the debt sued for to be an amount greater than the sum which was in fact due, the defendants were liable. The court made no such statement. What the court did say on the point in question—and we assume that it is the part of the charge to which this assignment was addressed—is as follows:

"The statutes of Illinois, gentlemen of the jury, like all the other statutes with which this court is acquainted, require that, before a party can obtain the assistance of this extraordinary remedy and right to sue by attachment, he shall make a certain affidavit, as the foundation of the issuance of such a writ. The requirement of such affidavit is that he shall state what is the amount of his claim, after giving all just credits and set-offs to which it is entitled, and he is not permitted to resort to this writ unless his affidavit contains that essential and jurisdictional fact. He is not permitted by the spirit as well as the letter of the law to seize and take into possession the property that belongs to another man under a claim which he knows to be false, or under an exaggerated claim, known to him not to be due to the extent sworn to. For instance, you may owe a man three thousand dollars, and, if he finds your property in a jurisdiction in which you do not reside, under such a statute as this he may sue out a writ of attachment and seize your property on the ground that you are a nonresident; but if, in his affidavit predicating that right, he should state the amount due and owing by you after allowing all just credits and set-offs as four thousand dollars, and that is not an honest mistake on his part, he is then prosecuting a claim that is a false claim, and he would be liable for suing out a writ based on an ex-

aggerated amount—an amount greater than that which he knows to be due —and he would then be subject to an action for malicious prosecution. The reason assigned for this rule by the courts of highest authority is that, by stating the correct amount of his claim for which he issues his writ of attachment, it would enable the debtor to have his property released from the operation of the writ by paying the amount of money he owes to the party, and he is not permitted to seize any more property under this writ than he may believe to be reasonably requisite to secure the amount of his debt."

We find nothing in the foregoing excerpt from the charge that is materially erroneous. A person does commit a legal wrong, for which redress will be afforded, if he sues out a writ of attachment, and causes it to be levied on the property of another, to secure the payment of a claim which he knows at the time to be either baseless or grossly exaggerated. A different rule obtains, of course, if the plaintiff acts in good faith, supposing the sum demanded, or about that sum, to be justly due; but if he is conscious at the time he procures the writ that his demand is baseless or grossly exaggerated, and with such knowledge he causes the writ to be levied on property of the defendant adequate to pay the exaggerated or baseless demand, such wanton and wrongful act on his part will entitle the attached debtor to recover damages for the injury which he may sustain. The law will not tolerate wanton and reckless conduct of that sort. The authorities heretofore cited fully sustain this view. If there is anything faulty in the foregoing excerpt from the charge, it is in that clause wherein the learned trial judge said "he would then be subject to an action for malicious prosecution." It would have been more accurate, perhaps, to have said that he would then be subject to an action for the malicious abuse of civil process, but that is an immaterial utterance, which could not have misled the jury or prejudiced either party, for, if there was a right to recover on the facts supposed, it is immaterial whether the action brought to redress the wrong was termed an action for malicious prosecution or for malicious abuse of process.

We find no statement in the charge of the lower court to the effect that the jury might infer that the prosecution was malicious from the fact that the affidavit for the attachment stated the debt sued for as greater than the sum that was actually due, and the assignment of error to that effect is therefore untenable. We are of opinion, however, that if this affidavit did grossly exaggerate the amount of the indebtedness of Johnston to the Tamblyns, and the parties who made the affidavit were conscious of that fact when it was made, such fact would afford ground for an inference of such malice as would serve to sustain the action. In that event the party making the affidavit was guilty of a wrongful act done intentionally, without legal justification or excuse; and such an act, in the eye of the law, is malicious.

Relative to the contention that the trial court erred "in charging the jury that an inference of bad faith might be drawn from the fact that the note of $12,523 was credited with the proceeds of sale of cattle," this may be said: The trial court did not instruct the jury, so far as we can discover, in so many words, that the inference in question might be drawn. In one portion of its charge, in reviewing the testimony, it did allude to the very singular fact, which was

126 F.—18

disclosed by the evidence, that the net proceeds of the cattle, amounting to about $2,895, that were shipped to East St. Louis and sold on the morning of November 3, 1900, which proceeds should have been applied on the note for $5,100, which was then due, were not so applied, but were indorsed as a credit as of date November 1, 1900, on the note for $12,523, which latter note was not then due, and was owned by a third party, having been theretofore sold and indorsed by the Tamblyns without recourse. After alluding to this circumstance very fully and fairly, the court remarked that it "may be considered by the jury on the inquiry, in ascertaining the mind of the parties in suing out this writ of attachment." We are of opinion that such a direction was entirely proper. It was certainly a curious fact—one that would excite the suspicions of most any person—that the proceeds of the cattle which were sold on the morning of November 3d were credited on a note not then due, and which did not belong to the Tamblyns, and on which they were apparently not liable, when the proceeds of such cattle should have been applied, and were intended by the shipper to be applied, as a credit of the note for $5,100, thereby reducing the amount due on that note to less than $2,000. The jury, we think, were clearly entitled to consider this circumstance, and the motives which led the defendants below to make the credit in the manner last stated.

There is one other assignment of error to be mentioned, which is to the following effect: The court erred "in charging the jury that the acceptance of the proceeds of the sale of the calves was not a ratification of their sale." We find no such declaration of law as this in the charge. It does appear, however, that in reciting the facts as they had been developed at the trial, for the information of the jury, the trial judge did allude to the fact that after Johnston had paid all the notes heretofore mentioned, namely, the note for $12,523 and the balance due on the note for $5,100, which figured in the attachment suit, his attorney went to East St. Louis, Ill., where the attachment suit was then pending, and entered into the stipulation heretofore mentioned, consenting to the discharge of the National Stockyards Company as garnishee in that action, and that the plaintiff in the attachment suit have judgment for costs. After stating these facts, in substance, the trial judge said:

"That fact, gentlemen of the jury, and so the court charges you, created no estoppel against the maintenance of this suit. In other words, the acceptance of the money does not constitute a waiver of his right to bring this action for malicious prosecution of the attachment, if it was malicious. * * *"

We infer that the assignment of error last mentioned has reference to this paragraph of the charge, but we do not perceive any error of law in the statement so made. The calves that were attached while in the hands of the stockyards company were sold, and the proceeds of the sale were received and held for a time by the stockyards company as garnishee, who eventually paid them over to Johnston, or pursuant to his direction, so that he received the benefit thereof. We fail to perceive how his consent, or that of his attorney, that the garnishee might be discharged, and that a judgment be entered in

favor of the plaintiff for costs, which consent was given on or about
January 16, 1901, after all the notes had been paid, could operate
to estop the plaintiff below from complaining of the original wrong,
which consisted in suing the plaintiff below for a sum largely in ex-
cess of the amount which he actually owed, and causing enough
of his property to be attached, while in transit and in a foreign juris-
diction, to compel the payment of the exaggerated demand.

This disposes of all the assignments of error that are addressed to
the instructions which were given by the lower court, and we find
nothing therein that would justify a reversal of the judgment below,
even if the assignments were made in conformity with our rule.

It should be further observed, in this connection, that the learned
trial judge, after reviewing the facts of the case at considerable
length, and stating the law applicable thereto in the manner herein-
before partially shown, concluded the charge, except as to the assess-
ment of damages, by the following specific direction:

"If you find and believe from the evidence, gentlemen of the jury, in this
case, that the defendants, in suing out the writ of attachment in question,
instituted it for the just amount of their claim, as believed by them to be due,
that they gave it all the credits known to them to which it was justly enti-
tled at that time, that the note was then past due, and that the defendant was
a nonresident of that state (and the evidence shows he was), then the defend-
ants had a right to institute the suit; and their purpose or animus would be
a matter of no consequence in this case, and would not subject them to this
action. But if, on the other hand, you find and believe from the evidence in
this case that the defendants did not give to the note the credits to which it
was justly entitled at that time, and they were conscious of the fact that they
were not doing so when the affidavit was made and the attachment was sued
out, then that was an improper and abusive use of the writ of attachment,
and would render them subject to this action for malicious prosecution, as
heretofore stated to you."

This latter instruction placed the crucial issue of fact in the case
before the jury in a clear and concise form, and in such a manner
that neither party would seem to have any just cause for complaint.

The errors that have been assigned relative to the admission of tes-
timony which is said to have been inadmissible are quite numerous,
no less than nine errors of that sort having been specified. It would
subserve no useful purpose, and would needlessly prolong this opin-
ion, if we should undertake to state the substance of the evidence
to which these assignments relate, in detail. It will suffice to say,
therefore, that we have gone over these assignments carefully, and
have read the evidence to which they refer, and are satisfied that none
of them are tenable or of such importance as would justify a re-
versal of the judgment. In some instances the record fails to show
that any exception was taken when the evidence was introduced; in
other instances the testimony which is now objected to was elicited
by the plaintiffs in error themselves on the cross-examination of wit-
nesses, or was simply a repetition of testimony which had already
been introduced without objection; while in other instances the tes-
timony does not seem to have been either incompetent or immate-
rial. For example, in one instance, where an exception was duly
saved, the plaintiff below was allowed to give evidence tending to
show that he had been prevented from obtaining a loan from some

bankers in Texas, to whom he had applied for a loan, and who had promised to make it, because prior to the completion of the transaction they happened to hear of the pendency of the attachment suit against the plaintiff which had been brought in East St. Louis, Ill. We think that this evidence was competent, in a case of this character, as tending to show loss of credit incident to the alleged wrongful conduct of the defendants.

It is suggested in the brief of counsel for the plaintiffs in error, and some mention of the fact was made in the argument, that the damages which the jury assessed in this case are excessive, and that the judgment ought to be reversed for that reason. It is a sufficient answer to this suggestion that this court cannot reverse a judgment, where no error of law appears upon the face of the record, simply because the damages seem to be too large. Railroad Company v. Fraloff, 100 U. S. 24, 31, 25 L. Ed. 531; Arkansas Cattle Co. v. Mann, 130 U. S. 69, 75, 9 Sup. Ct. 458, 32 L. Ed. 854; Parsons v. Bedford, 3 Pet. 433, 446, 447, 7 L. Ed. 732. Moreover, the case in hand was one which warranted the assessment of punitive damages, if the jury were satisfied, as they evidently were, that the defendants below had sued out an attachment upon a demand that was grossly in excess of what they knew to be due, and had caused it to be levied upon property of great value in a foreign jurisdiction, far removed from the debtor's place of residence; and it was the province of the jury to say what the amount of such punitive damages should be, in consequence of such wanton, malicious, and oppressive conduct. Besides, the trial court very clearly advised the jury, in the instruction which we have heretofore quoted, that the animus of the defendants in suing out the attachment was of no consequence, and should be disregarded, if they instituted the attachment suit "for the just amount of their claim, as believed by them to be due, and if they gave it all the credits known to them to which it was justly entitled at the time."

Finding no error of law upon the face of the record such as, in our opinion, would justify the reversal of the judgment below, it is accordingly affirmed.

SANBORN, Circuit Judge (dissenting). When the attachment which is the basis of this action was run, the defendants below had a good cause of action against the plaintiff, Johnston, for a debt of $1,974.11, and good ground for the attachment of his property, in the fact that he was a nonresident of the state in which the action was commenced. Hence the defendants had the right to bring the action and to levy the attachment for $1,974.11, and it was not material whether they exercised that right with or without malice. The purpose or motive with which one enforces a legal right furnishes no ground of complaint or action. The plaintiff suffered no legal injury from the fact that an action was commenced against him, and his property was attached. There was both probable and legal cause for the action and for the attachment, and no cause of action for malicious prosecution of either of them could or did arise.

But the defendants maliciously stated the amount of their claim

in the attachment at $5,100, when it was only $1,974.11, and they caused property to be attached of the value of $6,600, when property of the value of not more than $3,000 would have been ample to secure to them what was due them. The exaggeration of the amount owing and the excessive levy constituted a legal wrong, and the plaintiff was entitled to recover all the damages which he suffered by reason of its infliction. Those damages, however, could not have exceeded the difference between the damages which the plaintiff would have suffered if the defendants had run their attachment for $1,974.11, and had levied it on property worth no more than sufficient to secure the payment of that amount, and the damages which he did sustain by the attachment for $5,100 and the levy upon property of the value of $6,600. The former damages constituted no legal injury. The defendants had a right to inflict them, and for the infliction no cause of action arose in favor of the plaintiff. He was entitled only to those damages which resulted from the exaggeration of the claim and the excess of the levy.

But the court below did not limit the damages recovered in this case to those which resulted from the excessive amount claimed in the attachment, or from the seizure of an excessive amount of property under it, but it tried the case upon the theory, and it instructed the jury, that the measure of the plaintiff's damages was that which prevails in actions for malicious prosecutions without probable cause; that is to say, all the damages which were inflicted upon the plaintiff by the commencement of the suit, and by the issue and levy of the attachment. It instructed the jury (1) that this was an action for the malicious prosecution of an attachment; that, "to sustain such an action, the evidence must be such as to establish the malice of the party in suing it out, and that the action was without probable cause to sustain it"; (2) that, if the attachment was sued out for the just amount of the claim, "then the defendants had a right to institute the suit," but that, if the defendants knowingly sued it out for an excessive amount, "that was an improper and abusive use of the writ of attachment, and would render them subject to this action for malicious prosecution, as heretofore stated to you" (that was to say, to the action for the prosecution of the attachment suit without probable cause); and (3) that, in case they found this issue for the plaintiff, he would be entitled to all the damages which resulted from the wrongful act of the defendants which the court had specified, which was the malicious prosecution of the attachment. Exception was taken to this charge before the jury retired, on the ground that the court should have instructed them "that the attachment suit was properly maintainable, and that, there being a sufficient cause of action and a proper ground of attachment, that the question of probable cause was wholly immaterial." In my opinion, this exception points out a fatal error in the charge of the court, which is sufficiently specified in the assignment of errors. No action for malicious prosecution was maintainable in this suit; there was probable and legal cause for the attachment; so that the question of probable cause was immaterial, and was erroneously submitted to the jury, and the plaintiff was not entitled to all the damages which

resulted from the issue of the attachment, but his only legal damages were those which he sustained because the writ was issued for $5,100, instead of for $1,974.11, and was levied on property worth $6,600, rather than upon property sufficient only to secure the payment of the just debt. I am unable to persuade myself that this was not a grave error, which resulted in a judgment for an amount far in excess of the just damages for the abuse of the writ, and I am of the opinion that it entitles the defendants to a new trial of the action.