## H. F. WILCOX OIL & GAS CO. v. SKIDMORE.

### No. 9922.

Circuit Court of Appeals, Eighth Circuit.
Sept. 6, 1934.

Horace B. Clay and W. I. Williams, both of Tulsa, Okl. (R. L. Davidson, of Tulsa, Okl., on the brief), for appellant.

David A. Murphy, of Kansas City, Mo. (Harding, Murphy & Tucker, of Kansas City, Mo., on the brief), for appellee.

Before STONE and SANBORN, Circuit Judges, and WYMAN, District Judge.

SANBORN, Circuit Judge.

The appellant is a Delaware corporation; the appellee, a citizen of Missouri. The parties will be referred to as in the court below, where the appellee was plaintiff. Prior to February 1, 1929, the plaintiff was virtually the sole owner of the stock of the Skidmore Oil Company, a Missouri corporation engaged in selling gasoline and oil in Kansas City and the vicinity. As of that date the defendant agreed to buy all of the capital stock of the company from the plaintiff for a price of $42,647.79, of which $9,497.79 was to be cash and the balance 1,300 shares of the stock of the defendant on the basis of $25.50 a share, its then market value (a total of $33,-150.00), the stock to be delivered six months after February 1, 1929. The agreement was reduced to writing and dated February 1, 1929. The cash was paid upon the execution of the agreement, and the 1,300 shares of stock were delivered to plaintiff on August 6, 1929. On or about November 29, 1930, the parties entered into a "confirmation agreement," evidenced by a letter from the defendant to the plaintiff and accepted by him. It reads as follows:

"For a valuable consideration, the receipt of which is hereby acknowledged, the undersigned, H. F. Wilcox Oil & Gas Company agrees that whereas, it has heretofore purchased your oil business at Kansas City, Missouri, and has paid and delivered to you 1300 shares of its capital stock, on the basis of $25.50 per share, that in the event the market price on the New York Stock Exchange of the capital stock of said company does not reach $25.50 per share between November 29, 1930, and December 1, 1931, this company will, on said last mentioned date, either pay you in cash or in additional shares of said stock of an equivalent value the difference between the market value of such stock on December 1, 1931, and the value thereof based on $25.50 per share; or will take up from you the said 1300 shares of stock on the basis of $25.50 per share, with the further agreement that in the event the market price on the New York Stock Exchange of said stock reaches the sum of $25.50 per share on or before December 1, 1931, then said company shall be relieved of any further responsibility whatsoever with respect to said 1300 shares of stock."

The stock did not reach a price of $25.50 per share on the New York Stock Exchange between November 29, 1930, and December 1, 1931. On November 29, 1930, it was $10 a share. On December 1, 1931, the market price was $5 a share. The defendant refused to carry out the agreement, and the plaintiff brought this action, setting forth in his petition the agreement, its breach, and his damages. The defendant moved for an order requiring the plaintiff to make his petition more definite and certain "by stating what was the valuable consideration mentioned in his petition moving from the plaintiff to the defendant for the guaranty sued on in this action, and whether the defendant received such consideration."

The plaintiff, with leave of court, then filed an amended petition which was in all essential respects the same as the original. The defendant then moved to strike the amended petition, but this motion was denied.

The defendant, in answer, admitted making the agreement of November 29, 1930, but alleged that it was without consideration. It then set forth the agreement by which it purchased the stock of the Skidmore Oil Company and Skidmore acquired the 1,300 shares of the defendant's stock. It asserted that, after that transaction, it had employed Skidmore as its managing agent in Kansas City, and that he remained in its employ in that capacity until January 23, 1931, at which time he resigned; that, after the stock crash in October, 1929, the defendant's stock depreciated in price; that in the fall of 1930 the plaintiff represented that he was financially embarrassed, and requested the defendant to guarantee a price of $25.50 a share on the 1,300 shares he had accepted; that at the time he made the request he stated that he would remain with the defendant and would not engage, directly or indirectly, in the business of selling petroleum products in Wyandotte county, Kan., or Jackson county, Mo.; that on or about November 17, 1930, the plaintiff renewed his request for a guaranty, and

750

it was then agreed that the defendant would write a letter, to be accepted by the plaintiff, guaranteeing the price of the stock for the period of one year, on condition that the plaintiff would not engage in the marketing of petroleum products in the territory above referred to; that such a letter was written on November 17, 1930; that the plaintiff requested that the paragraph in that letter incorporating his agreement not to engage in the business of marketing petroleum products be omitted, and he then promised that he would remain in the defendant's employ, and that, if he should leave such employment, he would not engage in the oil business in the territory referred to; that solely in reliance upon this promise the defendant entered into the confirmation agreement of November 29, 1930; that about January 23, 1931, the plaintiff resigned his position with the defendant, and, in violation of his promise, entered into the business of selling petroleum products in the Kansas City territory, and became an active and unfair competitor of the defendant; that, when the plaintiff made the promise upon which the defendant relied in executing the guaranty, he had no intention of carrying it out, but intended not to perform it; that this promise of the plaintiff was the sole consideration for the defendant's guaranty, and that such consideration has wholly failed; that the guaranty was procured by fraud of the plaintiff in falsely representing that he would remain in the defendant's employ and would not engage in the oil business if he left its employment.

█ Briefly stated, the situation at the time the case went to trial was this: The plaintiff had asserted the contract of November 29, 1930, its breach by the defendant, and his damages. The defendant had admitted the making of the contract, and had asserted that there was no consideration for it, and that it was procured by fraud. At the opening of the trial, there was some controversy about the burden of proof. The court held that the burden was upon the plaintiff to go forward with the evidence to prove the contract and its breach, and that the burden of showing want of consideration and fraud was on the defendant.

While it was not necessary for the plaintiff to prove the contract, since it was admitted, and probably not necessary for him to prove the breach, since the defenses asserted in the answer negative the performance of the contract by the defendant, we do not find that the defendant admitted the amount of the plaintiff's damages. In order, therefore, for the plaintiff to recover, he was required to prove that he was damaged and to what extent. Hence no error can be predicated on the court's ruling as to who had the opening and closing.

The plaintiff was the first witness. On his examination in chief, he testified to the making of the contract sued on, its breach by the defendant, and the facts tending to establish his damages. On cross-examination, the defendant was permitted, over the plaintiff's objection, to ask the plaintiff what the consideration for the contract was. He said it was a part of the original purchase price of the stock; that it was orally understood at the time he sold his stock in the Skidmore Oil Company to the defendant that the defendant was to guarantee the 1,300 shares of its stock at $25.50 a share; that this understanding was not incorporated in the sales agreement, but was, under date of November 29, 1930, reduced to writing in the "confirmation agreement."

On redirect examination, the defendant objected to the plaintiff's testifying that the agreement for the sale of plaintiff's stock to the defendant included a guaranty of the 1,300 shares of its stock, on the ground that it was an attempt to vary the terms of a written instrument by parol evidence. The court sustained this objection. The plaintiff then offered to prove, in substance, that, when he sold the stock of his company to the defendant, it was agreed that the defendant would guarantee its stock for $25.50 a share; that that guaranty was not incorporated in the written contract; that thereafter the plaintiff from time to time demanded that this agreement be reduced to writing, which was finally done on November 29, 1930. An objection to this offer was sustained. Thereupon the plaintiff procured from the court leave to file and filed his "second amended petition," in which he set forth what he claimed was the actual consideration for the contract of November 29, 1930. In his amendment he alleged that he executed the contract of sale upon the agreement of the defendant that it would guarantee that, when its stock was delivered to him, it would have a value of at least $25.50 a share, and that the defendant would, on demand, give him a written confirmation of such guaranty, that it was in reliance upon such verbal promise that the plaintiff accepted the offer for his stock in the Skidmore Oil Company and that he would not have done so otherwise. He further alleged that, when the 1,300 shares were delivered to him August 6, 1929, they were worth

less than $25.50 a share; that in August or September he demanded that the defendant take his stock at the agreed figure, give him the difference between the market price and the guaranteed price, or give him a written confirmation agreement; that the defendant then, through its president, said that the plaintiff's stock would be taken up January 1, 1930, at $25.50 a share, and asked the plaintiff to wait until that time; that the plaintiff said he might not be able to wait until January 1, 1930, but might have to sell the stock unless the defendant would take it up or execute the confirmation agreement; that the defendant then agreed that, if the plaintiff would hold the stock and not place it on the market, the defendant would take it up on January 1, 1930, and pay $25.50 a share for it; that the plaintiff, in reliance upon this agreement, promised not to sell the stock until January 1, 1930; that the defendant failed to perform its agreement to purchase the stock on January 1, 1930; that on November 29, 1930, the plaintiff extended the time of performance until December 1, 1931, and the defendant, in consideration of "the foregoing" and the extension of time, executed and delivered the confirmation agreement of November 29, 1930.

The defendant moved to strike the second amended petition on the ground that a new and different cause of action was set up thereby. The motion was denied. The defendant then demurred to the second amended petition. The demurrer was overruled. The defendant did not claim surprise or ask for a continuance, although the court intimated that it would be entitled to one. The defendant then filed its answer to the second amended petition, and the trial was resumed.

The plaintiff's evidence tended to establish all of the allegations of his second amended petition. The substance of his testimony was as follows: That, after he got the 1,300 shares of stock, and in the fall of 1929, he had a conversation with Mr. Wilcox, president of the defendant. That he told Mr. Wilcox that, unless the guaranty was reduced to writing so as to satisfy his creditors, he was going to be forced to sell the 1,300 shares of stock and take a loss on it. That Mr. Wilcox said: "Skid, you don't have to worry about that guaranty. We have decided that on January 1, 1930, we are going to pick up from you the 1300 shares of stock and pay that $33,150 in cash." That the plaintiff replied: "I don't know whether I can wait until January 1st or not. My obligations are pressing and I am afraid I am going to have to sell it."

That Mr. Wilcox then said: " 'Skid,' at this very time myself and a few of my financial friends are attempting to bolster the market and raise it on the New York Stock Exchange and due to the fact that we don't want to sell it; and due to the fact that several of the other employees in the company hold stock the same as you do, and several of your friends in Kansas City, I am afraid it would embarrass us a little bit if you would unload at this time when we are trying to hold it up. So if you will hold the stock until January 1st, as I stated just a while ago, we will pick it up and pay you $33,150 for your stock as per our agreement."

That the plaintiff accepted that proposition. That repeatedly after January 1, 1930, he demanded payment from the defendant pursuant to the promise made by Mr. Wilcox. That between January 1, 1930, and November 29, 1930, he requested several times that the guaranty be put in writing. That on or about November 29, 1930, he said to Mr. Wilcox: "I must have that guarantee or I must have the cash. You have at one time promised it to me in cash and you have promised me the guarantee and I haven't any and my obligations are pressing me and I want it settled today." That Mr. Wilcox then answered: " 'Skid,' we don't want to pay that now, but if you will extend the time on it, say December 1st, 1931, I will give you a guaranty in accordance with our agreement." That the plaintiff said, "All right." That thereupon the confirmation agreement of November 29, 1930, was executed.

The substance of the testimony introduced by the defendant was: That there never was any oral agreement or understanding prior to November, 1930, that the defendant should guarantee the 1,300 shares of stock. That the confirmation agreement was made at the plaintiff's request and upon his agreement to remain in defendant's employ, and not in any event to become a competitor of the defendant in the Kansas City territory. That this agreement to refrain from engaging in the oil business was left out of the written agreement because plaintiff represented that it was not satisfactory to him or his creditors that it should be incorporated. That no agreement was ever made to take up his stock on January 1, 1930, and that no such conversation as the plaintiff testified to with reference to keeping his stock off the market ever took place. That his promise to remain with the defendant and to refrain from competing with it was the sole inducement for the confirmation agreement, and was false and fraudulent at

the time it was made, because the plaintiff then intended to leave defendant's employ and to engage in the oil business, as he subsequently did.

The plaintiff denied that he ever promised or agreed to remain in the defendant's employ or that he ever promised not to engage in the oil business in the Kansas City territory or elsewhere.

At the close of the plaintiff's case, the defendant entered a demurrer to the evidence, which was overruled. It did not stand on its demurrer, but introduced its proof.

At the close of all the testimony, the defendant made no motion for a directed verdict, but its requests for instructions included a request for a peremptory instruction in its favor, without stating any grounds for the granting of the request. This request was denied. The jury returned a verdict in favor of the plaintiff, and from the judgment entered thereon this appeal is taken.

■ The defendant questions the sufficiency of the evidence to support the verdict, but that question is not before us for review. If the court erred in overruling the defendant's demurrer to the evidence at the close of the plaintiff's case, the error was waived by the introduction of evidence by the defendant. Walton Trust Co. v. Taylor (C. C. A. 8) 2 F. (2d) 342, 344; Tamblyn et al. v. Johnston (C. C. A. 8) 126 F. 267, 271; Lohman v. Stockyards Loan Co. (C. C. A. 8) 243 F. 517; American Smelting & Refining Co. v. Karapa (C. C. A. 8) 173 F. 607.

■ The request for a peremptory instruction, stating no grounds, was insufficient to entitle defendant to a review of the sufficiency of the evidence. Mansfield Hardwood Lumber Co. v. Horton (C. C. A. 8) 32 F. (2d) 851; Williams Bros., Inc., v. Heinemann (C. C. A. 8) 51 F. (2d) 1049; Standard Acc. Ins. Co. v. Rossi (C. C. A. 8) 52 F. (2d) 547, 548; Denver Live Stock Commission Co. et al. v. Lee et al. (C. C. A. 8) 20 F. (2d) 531; Public Utilities Corp. of Ark. v. McNaughton (C. C. A. 8) 39 F. (2d) 7; Falvey v. Coats (C. C. A. 8) 47 F. (2d) 856, 89 A. L. R. 1.

■ It may as well be said, however, that we have examined the record and are satisfied that the defendant was not entitled to a directed verdict because of the insufficiency of the evidence. The testimony of the plaintiff that he promised not to place his 1,300 shares of stock on the market until December 1, 1931, upon the defendant's agreeing to give him the confirmation agreement, was enough to warrant the submission of the case to the jury.

■ It is elementary that a promise is sufficient consideration for another promise. Fidelity & Deposit Co. of Maryland v. Wheeler (C. C. A. 8) 34 F. (2d) 892, 895.

■ The defendant contends that the court erred in permitting the filing of the second amended petition, because it constituted a different cause of action. From what has been stated, it is clear that the defendant brought upon itself the filing of the second amended petition. Instead of relying upon its own evidence to show that there was no consideration for the contract sued upon, it insisted from the beginning on the plaintiff's disclosing what the consideration was, as a part of his case. The court, having required the plaintiff to testify to what he claimed the consideration for the contract was, when the contract itself recited consideration, properly permitted him to amend his petition in order to show why he contended that the contract upon which he sued was a binding agreement and to conform his pleadings to what he proposed to prove. If the original petition had contained from the beginning all of the allegations of the second amended petition, which it might well have done, the defendant would have been in exactly the same position that it was in after the amendments were made. It did not claim surprise or prejudice, or ask for a continuance. Under the circumstances, we fail to see how or in what way prejudicial error can be predicated upon the allowance of the amendment.

■ On the question of departure in pleadings, see: Fleischmann Construction Co. et al. v. United States to the use of Forsberg et al., 270 U. S. 349, 359, 46 S. Ct. 284, 70 L. Ed. 624; Illinois Surety Co. v. United States to the use of Peeler et al., 240 U. S. 214, 222, 36 S. Ct. 321, 60 L. Ed. 609; Gormley v. Bunyan, 138 U. S. 623, 630, 11 S. Ct. 453, 34 L. Ed. 1086; Missouri, Kansas & Texas Railway Co. v. Wulf, 226 U. S. 570, 575, 576, 33 S. Ct. 135, 57 L. Ed. 355, Ann. Cas. 1914B, 134. For the rule that pleadings may be amended to conform to the proof, within the discretion of the trial court, see: Bamberger v. Terry, 103 U. S. 40, 43, 44, 26 L. Ed. 317; Ford Motor Co. v. Chas. A. Myers Mfg. Co. (C. C. A. 6) 64 F. (2d) 942, 943; Walker Grain Co. et al. v. Southwestern Telegraph & Telephone Co. (C. C. A. 5) 10 F. (2d) 272, 275; Southern R. Co. v. Gadd (C. C. A. 6) 207 F. 277, 279; Waters et al. v. Guile (C. C. A. 6) 234 F. 532, 538, 539; Pulver v. Union

Inv. Co. (C. C. A. 8) 279 F. 699, 705; Harris v. Egger (C. C. A. 6) 226 F. 389, 399.

The defendant devotes many pages of its brief to a discussion of the parol evidence rule, for the purpose of demonstrating that the alleged oral agreement for a guaranty of the 1,300 shares of stock which was omitted from the sales contract could not constitute a valid consideration for the "confirmation agreement." For the purpose of this case, that may be conceded. The fact remains that there was testimony that the confirmation agreement was entered into because Skidmore agreed to keep his stock off the market until December 1, 1931, and that his promise in that regard was, in whole or in part, the consideration for the promise of the defendant.

But the defendant contends that it was error to permit the plaintiff to show the existence of the oral agreement and other facts and circumstances leading up to the execution of the confirmation agreement upon which he bases his action.

We think that both sides had the right to introduce testimony showing every fact and circumstance bearing upon the reasons for the execution of the "confirmation agreement." The jury were required to determine who was telling the truth and who was testifying falsely in this case. It was important for them to know whether the facts and circumstances out of which the confirmation agreement arose were consistent with the plaintiff's theory or with that of the defendant. The fact that the defendant, in executing this agreement, was carrying out an antecedent moral obligation which did not include an agreement on the part of Skidmore to refrain from entering into competition with it, certainly bore upon the issues, and was admissible as a part of the case history, if for no other reason.

The defendant complains of the court's refusal to give its requested instructions. It has already been pointed out that it was not entitled to a peremptory instruction. The other instructions requested were all adequately covered by the general charge, to which no exception was taken. Whether this charge was accurate or inaccurate is therefore not a question with which we are concerned.

Since the issues of fact under the evidence were for the jury, since the evidence introduced by the plaintiff, of which the defendant complains, was not inadmissible, and since the theory upon which the court submitted the case to the jury was not challenged by proper exceptions to the charge, there is no basis for a reversal.

The defendant, however, assigns as error the denial of its motion for a new trial or for judgment notwithstanding the verdict. Judgment notwithstanding the verdict cannot be granted in the federal court [Glynn v. Krippner et al. (C. C. A. 8) 60 F.(2d) 406, 409], nor can the denial of a motion for a new trial, except under exceptional circumstances with which we are not here concerned, be reviewed. Fairmount Glass Works v. Cub Fork Coal Co. et al., 287 U. S. 474, 53 S. Ct. 252, 77 L. Ed. 439.

The judgment is affirmed.