### NEE v. UNITED STATES. JACOBS v. SAME. SCHRADER v. SAME.

(Circuit Court of Appeals, Third Circuit. July 13, 1920.)

Nos. 2553–2555.

1. Criminal law ⬁780 (3)—Refusal to instruct on accomplice testimony not error.

While it is proper to caution the jury to scrutinize the testimony of an accomplice, refusal of an instruction that they should not rely on such testimony, unless it produces in their minds the most positive conviction of its truth, was not error.

2. Indictment and information ⬁166—Names of unknown conspirators need not be proved.

Under an indictment charging conspiracy between defendants and with others unknown, where the conspiracy between defendants and the overt acts alleged are proved, and that they must have been aided by others, it is not essential to conviction that the names of such others be shown.

3. Conspiracy ⬁45—Large discretion in admission of evidence.

In a prosecution for conspiracy to deal illegally in narcotic drugs, a check made by one of defendants, payable to one of the same name as a proved agent of an importer of such drugs, supplemented by evidence of identity of the indorsement on the check with a proved signature of such agent, held admissible, under the rule that in conspiracy cases the court has a wide discretion on the admission of evidence.

4. Conspiracy ⬁45—Evidence admissible to show illegal purpose.

In a prosecution for conspiracy to deal illegally in narcotic drugs, evidence that a person to whom one defendant gave a check received drugs

⬁For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of such kind from a Canadian custom house as agent for a firm which was a dealer in drugs *held* admissible.

**5. Criminal law ☞956(1)—Denial of leave to take newly discovered evidence discretionary.**

Refusal of leave to defendants to take alleged newly discovered evidence in support of a motion for new trial, on the ground that such evidence, if as alleged, would not avail defendants, *held* within the discretion of the court.

**6. Criminal law ☞369(2)—Evidence of other offense admissible to prove overt act.**

Where narcotic drugs charged in the indictment to have been concealed by defendants pursuant to a conspiracy to sell the same in violation of law were found in a safe, where they had been placed by one of defendants, and evidence that defendants were engaged in a business in violation of the state law, as shown by their own evidence, was also found in the safe, such fact might be considered on the question of concealment of the drugs.

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Criminal prosecution by the United States against Patrick Nee, Henry Jacobs, and John Schrader. Judgment of conviction and defendants separately bring error. Affirmed.

Oliver K. Eaton, of Pittsburgh, Pa., for plaintiffs in error.

John M. Henry, of Pittsburgh, Pa., for the United States.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

WOOLLEY, Circuit Judge. The three plaintiffs-in-error were tried with one Goodwin for conspiring to violate laws of the United States. Criminal Code, § 37 (Comp. St. § 10201). The indictment contained two counts. The first charged the defendants with combining and conspiring together and with persons unknown to receive, conceal, sell and facilitate the transportation, concealment and sale of smoking opium as prohibited by the Act of February 9, 1909, amended by the Act of January 17, 1914 (Comp. St. §§ 8800–8801f); the second count charged them with conspiring together and with persons unknown to deal in and sell morphine sulphate, a derivative of opium, in violation of the registration and tax provisions of the Act of December 17, 1914, known as the Harrison Act (Comp. St. §§ 6287g–6287q).

The overt act charged in the first count was, that Nee, in furtherance of the conspiracy, concealed in a safe at a certain place 101 cans of smoking opium; and the overt acts charged in the second count were that Nee concealed in a safe 45 ounces of morphine sulphate; that Schrader sold thirty grains of morphine sulphate to Williams and thirty grains of smoking opium to Acker; and that Jacobs sold one ounce of morphine sulphate to Smith and one ounce to Gamble, without having registered, etc. The testimony further showed association of certain of the defendants in the business of bookmaking and association in the occupancy of premises in which were found evidences of traffic in opium.

All were convicted. Goodwin submitted to his sentence. The remaining three sued out this writ of error, charging error in the court's rulings on evidence and instructions to the jury.

The assignments of error are classified by the defendants (below) in their several contentions; the first and principal one being:

[1] (a) The failure of the court to charge the jury as to the value of the testimony of an accomplice, and its failure adequately to draw the attention of the jury to the danger of placing too much reliance upon such testimony, and to their rights to require corroborating testimony before giving credence to such evidence.

The point made by the defendants and refused by the court was as follows:

"The testimony of an accomplice should be received with caution and scrutinized with great care by the jury, who should not rely upon it, unless it produces in their minds the most positive conviction of its truth."

In support of this point the defendants relied on Caminetti v. United States, 242 U. S. 470, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B. We are not familiar with any rule warranting an instruction in this form. While the Supreme Court said in the case cited, that

"It is the better practice of a trial judge in instructing a jury to caution them to scrutinize the testimony of an accomplice,"

that court expressly ruled in the same case that mere failure so to do is not reversible error. Nor do we see the pertinency of the defendants' contention that the jury should have been cautioned not to credit the testimony of an accomplice unless sustained by corroborating evidence, in view of the proof of the overt acts averred. Gretsch v. United States (C. C. A. 3d) 242 Fed. 897, 898, 155 C. C. A. 485; Knoell v. United States (C. C. A. 3d) 239 Fed. 16, 152 C. C. A. 66.

This we think disposes of this assignment. If, however, there was sufficient substance in the contention to embody it in an assignment of error, it disappears from the case on the evidence that Gamble, Smith and Acker, who purchased drugs from one or the other of the defendants, were not, under authority of Wallace v. United States, 243 Fed. 300, 156 C. C. A. 80, accomplices. They were purchasers, and as such were not amendable to the Act. In consequence, any rule of caution with respect to the testimony of accomplices does not apply to their testimony.

[2] (b) Error in the court's charge relating to conviction of conspiracy with a person not named in the indictment, on the theory that there being no evidence in the case of any association on the part of the defendants with any person not named in the indictment, there cannot be a conviction.

The indictment charged conspiracy between the defendants and between them and divers persons to the grand jurors unknown to do the forbidden acts. The evidence of transactions between the parties was quite sufficient to sustain a finding by the jury of conspiracy between themselves. The transactions covered drugs in such quantity that the aid of others was necessary in procuring and distributing them, and were in themselves of such a nature as to make it certain

that others unknown to the grand jurors were involved in the conspiracy. If the names of these persons did not later appear (which is far from certain), yet, if the conspiracy among the defendants charged and the overt acts alleged were proven, conviction must follow. The court very carefully protected the defendants in this situation by pointing out repeatedly that before any one of them could be convicted, the jury would have to find conspiracy and the overt act set forth in the first count and at least one of the overt acts set forth in the second. We discover no error here.

[3] (c) Assignments of error under this classification refer to the identity of one Lortie, payee of a certain check, with one Lortie, receiver of morphine sulphate, and charge error to the court in admitting the check in evidence in proof of the fact that defendants were dealing in drugs and in proof of the source from which they secured their supply. The check in question was dated July 30, 1917, drawn by Goodwin, one of the defendants, to the order of A. C. Lortie, endorsed by Antonie C. Lortie and later by Montreal City and District Savings Bank. Together with this piece of evidence was admitted a Collectors Landing Wharf Receipt signed by A. C. Lortie for 300 ounces of morphine sulphate imported by Robins and Company. Supplementing these exhibits was the testimony of Arthur Lang, a witness for the Government. The check was found by Narcotic Inspectors of the United States in a desk on the premises used by Jacobs and Goodwin in the bookmaking business. That the check was drawn by Goodwin was not questioned. Lang testified that he was a Canadian Customs Officer residing at Montreal, Canada, and that A. C. Lortie appeared at the Custom House in Montreal in December, 1917, and received the morphine sulphate named in his receipt. Lang further testified that Robins and Company had received large shipments of narcotic drugs every month for a year prior to December, 1917, and that Lortie was their authorized agent. The chain of evidence established that Lortie, the payee and endorser of the check, had it cashed in Montreal. No explanation of the check was offered by Goodwin except that it might have been in settlement of a bet where a man making a wager directed payment to another person. There was no record of a bet by A. C. Lortie.

The defendants contend that this evidence was not incriminating because it did not identify Lortie, the payee of the check, with Lortie, the dealer in drugs.

It must be remembered that the defendants were being tried for conspiracy, a crime rarely susceptible of proof by direct evidence. Being provable, however, by circumstantial evidence, much discretion is left to the trial court and its views "will be sustained if the testimony which is admitted tends even remotely to establish the ultimate fact." Clune v. United States, 159 U. S. 590, 593, 16 Sup. Ct. 125, 126 (40 L. Ed. 269). In this issue of identity there was unmistakable identity of name and place. Added to this there was evidence of identity of signatures by comparison of the one in question appearing by endorsement on the check with one proven to be Lortie's. Comparison of a questioned signature with an authentic signature is

authorized by Act of Congress approved February 26, 1913, c. 79; U. S. Comp. Stat. § 1471, commented on in Maxey v. United States, 207 Fed. 327, 330, 125 C. C. A. 77, extending the rule of the common law in regard to comparisons of handwriting as reviewed in Withaup v. United States, 127 Fed. 530, 62 C. C. A. 328. This evidence was probative of the fact that the check was given by Goodwin to Lortie, and, taken in connection with other evidence, it tended to prove that it was accepted by Lortie from Goodwin in payment for drugs. It was not conclusive to be sure, but it was evidence. Though the argument is insistently made that the check denotes payment of an antecedent debt because the date of the check is anterior to the date of Lortie's receipt for one consignment of opium, yet the character of the debt, namely, for the sale of opium, may be inferred from the business in which Lortie was engaged, as established by proof to which the next assignment of error is addressed.

[4] (d) It appears from Lang's testimony that the business of Robins and Company was drugs and that Lortie was their authorized agent in lifting the same in the Customs Department of the Canadian Government at Montreal. This proof, with respect to the business of Robins and Company and the business of Lortie, was relevant to the issues. Whatever construction may be placed upon it, that is, if the jury should think that Lortie was not the agent of Robins and Company in drug imports, then, manifestly, the only other inference open to the jury was that Lortie was engaged in that business as principal. This would not help the defendants, because the evidence establishes, we think conclusively, that Lortie was in some character a dealer in drugs, and being such, evidence of his transactions at the Customs Department at Montreal, as testified to by Lang, and of his transaction with Goodwin, as shown by the check in question, was admissible and was sufficient to sustain a finding on the probable inferences.

[5] (e) A contention is made that the court erred in refusing the prayer of the petition of the defendants asking for the appointment of a commissioner to go to the City of Montreal to take testimony in support of certain reasons pressed for a new trial on the ground of after discovered evidence, which, it was represented, would show that Lortie had never been the agent for Robins and Company.

This application was addressed to the discretion of the court. The court denied the application because of its opinion, if the evidence proposed to be adduced could be produced upon another trial, there could be no different result upon the merits than that of the verdict rendered. We cannot say that the court abused its discretion. Manifestly, it mattered nothing at all whether Lortie was acting as agent or principal in taking drugs from the Customs Department. Being a drug dealer and receiving a check from one of the defendants charged with and found guilty of conspiring to deal in drugs in violation of the statutes, we think no error was committed by the court in its ruling.

[6] (f) The remaining contention is that the court erred and seriously prejudiced the defendants' case by using in its charge an expression with reference to the business of some of them. What the court said was this:

"Now it appears from the evidence on the part of the defendants that some of them are engaged in, or have been engaged in bookmaking, taking bets upon races. Now, gentlemen, you are not trying the defendants for their violation of the laws of Pennsylvania; they are being tried here solely for the alleged violation of the laws of the United States. But it is proper for me to say to you that the making of books, or taking of bets in horse racing is an offense against the laws of Pennsylvania, and if you find that the evidence of such offenses, or some of them, were kept with some of the matter before you as having been taken from the safe—or from the vault at 431 Fourth Avenue—it is proper that that should cause you perhaps to think as to whether there was an object in concealing evidence of crime against the laws of the State with evidence of crime against the laws of the United States. But we are not trying these defendants for any offense against the laws of Pennsylvania."

By this instruction the defendants maintain the court distinctly told the jury they might find from the concealing of these papers relating to bets on horse races that it was probable the defendants were guilty of the crime of conspiracy to conceal and sell opium and morphine. It is pertinent to note in the first place that testimony of the business of certain of these defendants, namely; that of bookmaking, was introduced into the case by the defendants. In other words, evidence of this business violative of a State law got into the case through a witness for the defendants and the court thereafter very carefully distinguished the State offense from the Federal offense and made it clear to the jury that the defendants were being tried not for the former but for the latter. This is one reason for the instruction quoted, of which, manifestly, the defendants cannot complain. Aside from this caution, it is evident that the trial judge had constantly in mind the overt act charged by one count of the indictment and necessary to be proved before the defendants could be convicted. This overt act was the concealment of drugs in a safe. Such concealment was evidence of the offense against the Federal law. Evidence of an offense against the State law, concealed in the same way and in the same place that evidence of the offense against the Federal law was charged to be concealed had a bearing upon the manner in which the accused were in the habit of concealing their different species of unlawful conduct. Moreover, concealment of opium in the safe was the overt act charged. That one of the defendants put the opium in the safe was proved by direct evidence. But more was required; it had to be proved that the opium so placed in the safe was concealed there. Testimony that certain of the defendants, admittedly engaged in violating a State law, concealed the evidence of that crime in the safe is persuasive evidence that when they put opium in the same safe, they put it there for the same purpose of concealment.

If, however, error can be found in the manner in which the court framed the instruction, it clearly was not prejudicial error.

In view of its gravity to the defendants, we have given this case very careful and deliberate consideration. After a thorough study of the record we discover no errors. We therefore direct that the judgment below be affirmed.