## KANNER v. UNITED STATES.

Circuit Court of Appeals, Seventh Circuit.
September 30, 1929.

No. 4107.

864

W. P. Crawford, of Superior, Wis., for appellant.

W. H. Dougherty, of Janesville, Wis., for the United States.

Before ALSCHULER, EVANS and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. Kanner appeals from a judgment whereunder a sentence of 30 years' imprisonment was imposed for his alleged participation in the burglary and robbery of the Superior, Wis., post office, November 20, 1925. For this offense, as well as for conspiracy to commit it, and also that of putting the assistant postmaster and the watchman of the post office in jeopardy of their lives by the use of revolvers and guns in effecting the robbery, Kanner, Charles Clause, Dave Berman, and a number of others, were jointly indicted. Kanner alone was tried.

That the offenses charged were committed appears beyond possibility of doubt, and, indeed, is not controverted. It is contended, not only that the evidence wholly fails to show Kanner's participation, and that thus there was error in denying his motion for a directed verdict, but also that numerous errors intervened in the admission and rejection of evidence upon the trial.

1. On the evening of November 20, three men came to the door of Assistant Postmaster McGill's residence, and were by him admitted to the house. They all went into an unlighted room, where McGill was ordered to be seated. Two of the men had donned masks, and the third went to a lighted room, where McGill's daughter sat reading. She was brought into the darkened room and seated by her father. A son, Leon, was upstairs, and he says that one of the men, then without mask, came upstairs and brought him into the room with the others. The men

tied the hands of the father and son, and all sat in the room to await the return of other members of the household, who were out for the evening. After several hours' waiting, during which the intruders talked and smoked, the other members returned, and they were brought into the room, and the hands of one of them, Emmet McGill, were bound. The assistant postmaster was then called aside and compelled to surrender the keys to the post office and to divulge the combination of the vault. Two of the intruders then left the house, and the third remained to guard the persons there. After several hours a fourth man came into the house, and left it with the guard, having cut the house telephone wires.

About 2 a. m. the janitor at the post office was held up by two men with guns, blindfolded, and his hands tied. The vault was opened and robbed of $70,000 in cash and stamps. The janitor was then bound and gagged and locked inside. Some of the members of the McGill household identified, from pictures, Berman, Clause, and Kanner as among the intruders, and search was at once begun for them. The government issued circulars bearing their pictures, and stating the crime for which they were wanted, and circulated them in large numbers all over the country. It was not until September 17, 1927, nearly two years after the crime, that Kanner was picked up in Chicago in a general police raid.

The identifying testimony of members of the McGill household is vigorously assailed as affording no evidence upon which conviction could be predicated. This evidence alone was not so positive as might be desired to predicate a conviction thereon. The elder McGill, while testifying that Kanner was one of the three, on cross-examination stated that, while this was his best judgment, it was possible he was mistaken, and that he would not swear to it, still saying he was never doubtful about it. There was more or less want of positiveness in the testimony of such of the others who were present that night and testified to the identification. They were positive that the pictures which they identified shortly after the robbery were those which others identified as photographs of Kanner, Clause, and Berman. It was testified that for a little while each robber was unmasked at the house, and their faces were seen. Whether the identification of these witnesses, standing alone, was such as would support the verdict, we are not called upon to determine. That is not the state of this record.

There was other evidence, which, with that of these witnesses, fairly presented to the jury the question of Kanner's participation in this affair. The elevator operator at the post office building testified that on November 20 a man, whom she afterwards identified as Kanner, rode on the elevator, and made some inquiries which particularly impressed her as being unusual, and that he went into a courtroom in the building. A couple of days after the robbery she told the postal inspectors of the man she had taken to the third floor that day, and when she saw him in jail after his arrest she identified him as the same person. The engineer of the Federal Building at Superior testified to having seen Kanner in the basement, where he inquired for the toilet, and left without going there. The engineer also talked with the inspector a day or two after the robbery, and on seeing Kanner in jail identified him as the same man who was in the Federal Building that day.

Defendant assails this testimony as improbable and incredible. This we cannot conclude. When it is considered that the robbery followed within a comparatively few hours after their seeing this man, it is not improbable that they became impressed with his appearance. It is true that these two did not see him participating in the robbery, but their testimony has special significance, when it is considered that Kanner in his testimony positively denied ever having been in Superior prior to the trial.

Then there is the testimony of McNeill—a desperate criminal serving a long sentence for a bank robbery, but an old acquaintance of Kanner—who testified that in conversations Kanner had admitted his participation in the Superior robbery. While McNeill is not such a witness as one would deliberately choose, and is probably deserving of the maledictions which Kanner's counsel so liberally heap upon him, it was, after all, for the jury to determine, as between him and Kanner, both of whom they saw and heard, whether they would credit McNeill, who testified to the admission, or Kanner, who denied it.

Enough has been stated to justify our conclusion that no error intervened in denying Kanner's motion for a directed verdict. 2. Error is charged in admitting the testimony of Farley, a police officer of Sioux City, Iowa, to the effect that in the summer of 1925 Kanner and Berman were together at Sioux City, and that Kanner introduced the witness to Berman. It is contended that this circumstance had no bearing on the

charge in question; but it tended to show prior relations between Kanner and Berman, and where, as here, a conspiracy is undertaken to be shown, any evidence tending to show association or relations between the alleged conspirators is proper, even though it does not definitely appear that that particular relation was in furtherance of the conspiracy charged. Berman was identified as one of those present at McGill's house, and, in undertaking to prove that Kanner was one of the conspirators, proof of their association or acquaintance, while not alone enough to establish the conspiracy, yet has sufficient bearing thereon to make it admissible. Baugh v. United States (C. C. A.) 27 F.(2d) 257; United States v. Greene et al. (D. C.) 146 F. 803; Reinhold v. State, 130 Ind. 467, 30 N. E. 306.

■ 3. Error is assigned on the admission of the evidence of a parole officer of the Stillwater, Minn., penitentiary, to the effect that Clause, who had been a prisoner at that penitentiary, was a man of more than average education. Although this is quite remote, and perhaps irrelevant on the direct question of Kanner's participation, it is sought to be justified in view of testimony to the effect that at the house that night, the person identified as Clause discussed books and authors during part of the several hours of waiting. It tended—however, quite remotely—to prove that the man who had been a prisoner at Stillwater was the same person who was that night at the house. We do not see how this in any event could have prejudiced Kanner.

■■ 4. Error is charged in the admission of testimony of postal inspectors and police officers, of a two years' nation-wide search for Kanner, and in the admission of printed circulars bearing his picture and that of Berman and Clause, offering a reward for information leading to their arrest. The government contends that this evidence was competent to prove flight and concealment, evidence of which is admissible as tending to show the state of mind of the defendant in relation to the alleged crime. Hickory v. United States, 160 U. S. 408, 16 S. Ct. 327, 40 L. Ed. 474; Allen v. United States, 164 U. S. 492, 17 S. Ct. 154, 41 L. Ed. 528. Of the wide circulation of the notices and offer of reward for his arrest, Kanner was fully aware. He knew that he was wanted for this crime, and the vain efforts of the officers to find him would have some tendency to show that he was eluding them. True, it would not positively prove this, but it would have that tendency, especially when coupled with other evidence which the record affords, which tends further to prove concealment, such as his assumption of a false name. We are satisfied that in the admission of this evidence there was no error.

■ 5. Error is assigned on the evidence of a postal inspector to the effect that, in conversation with Kanner, while he was under arrest, Kanner stated he had heard that several persons, whom he named, had committed the Superior robbery, and, further, that the witness was permitted to testify that at the time of the trial two of the men whom Kanner named were in prison and the third a fugitive. He also testified to the discussion with Kanner of other alleged crimes, none of which he admitted. Considerable of the conversation testified to is rather far-fetched, and might as well, or better, have been omitted. This is especially so with reference to the testimony of the whereabouts, at the time of the trial, of men whom Kanner mentioned in the conversation. It does not appear that Kanner had associated with these men, or even knew them, and they were not named in the indictment. That they were in prison, or fugitives from justice, would tend rather to corroborate the rumor that they committed the robbery, by showing that they were criminals. Kanner could not have been harmed by the statement of their incarceration or disappearance.

■ Generally speaking, evidence of conversations with Kanner was admissible, and it was not improper to permit testimony of anything he said with reference to the Superior robbery. There was no error in permitting testimony of what he said he had heard as to who were the perpetrators.

■ 6. Probably the most significant contention of error is in relation to the testimony of McNeill respecting participation of Kanner and Berman with him in the robbery of a Milwaukee bank in December, 1924, for which offense McNeill, at the time of testifying, was serving a 25-year term of imprisonment under sentence by a Wisconsin state court. It was competent to show the degree of acquaintance and intimacy between McNeill and Kanner, to rebut the improbability that Kanner would be having such conversations with an entire stranger. But, even though this alone might not justify evidence of Kanner's commission of an independent crime, in this case the evidence was directed, not only to Kanner's acquaintance with McNeill, but mainly to his relations with one of his alleged co-conspirators, Berman, who was identified as one of the three at McGill's house. Although this evidence tended strong-

ly to prove Kanner's commission of an independent crime, it tended also to establish an intimate and a criminal relation and association between him and Berman, which we hold was entirely proper to be shown, as bearing on their entry into the conspiracy here alleged. And it was not rendered incompetent because the evidence disclosed also the commission of an independent crime by Kanner. Moore v. United States, 150 U. S. 57, 14 S. Ct. 26, 37 L. Ed. 996; Waldeck v. United States (C. C. A.) 2 F.(2d) 243.

While it is unfortunate that in such a situation the harm to a defendant occasioned by evidence of other criminality cannot always be wholly obviated, the best and the usual manner of meeting it is through the court's charge to the jury, duly cautioning that the evidence on the independent crime affords no proof of the commission of the crime charged. The transcript here does not disclose the court's charge to the jury. It must therefore be presumed that the jury was duly charged by the court that such evidence must be limited in its application to the particular purpose for which it was admitted. This observation applies, not alone to this particular allegation of errors, but to others as well where the evidence complained of was proper only for a limited purpose, notably the alleged error in admission of evidence of concealment and flight.

The transcript shows that, when Kanner's counsel moved the court to strike out all testimony tending to connect Kanner with the bank robbery, the court said: "So far as the testimony may tend to connect this defendant with the bank robbery, that will be taken care of in the instructions to the jury." It may be said, in passing, that most of the details of the bank robbery were brought out in the lengthy cross-examination by Kanner's counsel.

7. We find no merit in the contention that McNeill's cross-examination was unduly restricted. This applied mainly to further details of the bank robbery, bearing on the disposition of the bank plunder, and as to McNeill's whereabouts in March, 1925. There is no indication in the record as to what the proposed evidence would show, and it does not appear there was harm to Kanner from this inconsequential limitation of the quite lengthy cross-examination of McNeill.

8. It is objected that evidence of Kanner's prior arrest on some other charge was not admissible against him. He had testified on direct examination to having gone under the name of Schmidt, and under that name having bought an automobile some time after the Superior robbery, which he was using in the illicit transportation of intoxicating liquor, an occupation in which he testified he was long quite active. He said this was the only assumed name he had ever taken, but in reply to the question as to a prior arrest admitted that in Grinnell, Iowa, a few years before the robbery, his name appeared as Hooper. He contended the police gave him that name, and further testified to circumstances indicating his innocence of wrong doing in Grinnell, and his discharge when brought before the magistrate. Under the circumstances it was not only competent to show these facts, as bearing on his assuming other names, but the entire evidence thereon, aside from that of change of name, did his case no perceptible harm.

9. The propriety of the evidence of government witnesses Diers and Braeunert is vigorously assailed. Kanner had testified that at no time had he ever been in Milwaukee, and he and others had testified that for a considerable period prior to December, 1924, and for a long time after the Superior robbery, he continuously wore a mustache. These witnesses testified that they saw him in Milwaukee in December, 1924, Diers at his Milwaukee grocery store with McNeill, and Braeunert at her home, and that then he had no mustache. In testing their recollection of an occurrence so long antedating the time of the trial, it was brought out, largely on cross-examination, that Braeunert had rented her garage to the man whom she identified as Kanner, and as a circumstance fixing the transaction in her mind she related that he brought an automobile there, which very shortly after the bank robbery the Milwaukee police removed. While incidentally this would have a bearing upon Kanner's connection with the Milwaukee robbery, for reasons above stated this did not render the evidence incompetent.

In rebuttal of Kanner's testimony it was competent to show, not only that he had been in Milwaukee (although for that purpose the court in the first instance declined to admit it), but it was also competent as showing he was not wearing a mustache within the period in which he testified he was so wearing it. The reference to the other circumstances was competent to show how it was that Braeunert fixed the time and identified the man. While the testimony was being offered Kanner's counsel said: "May we save the record, so that it may be definitely known that this testimony relates only to the question of whether or not the defendant wore a mustache, and that it will not be considered for

any other purpose?" To which the court replied: "If this testimony is offered for the purpose of showing that, and something else is shown incidentally, I suppose it can be received, and, if it ought to be received for a narrow purpose, it can be taken care of in the instructions."

At the close of the direct examination, Kanner's counsel requested the court then to instruct the jury that such testimony was limited to the single purpose of rebutting the claim that Kanner wore a mustache during the time mentioned, whereupon the court said: "The jury will bear in mind that this evidence has been received solely with respect to the issue raised as to whether the defendant wore a mustache at or about the time involved in this suit and at the time covered by this witness and other witnesses, and will not consider the evidence of this witness as bearing upon any other phase of the case." This was in substance said as to the testimony of each of these witnesses, and what we have said about the court's general charge to the jury is likewise here applicable.

10. A number of other errors are alleged and urged upon the admission of testimony as to which no objection was made and no exceptions saved. While a few of these instances may show some impingement upon the strict rules of evidence, we deem none of them sufficiently important to have materially affected the result. Wherefore, as well as for want of objection, we refrain from further discussion of them.

11. It is urged, with much earnestness, that serious error intervened in permitting the jury, unaccompanied by the defendant, to view the various parts of the post office building where the robbery was enacted. The contention is that this was violative of the Sixth Amendment to the Constitution, which provides that the accused shall enjoy the right to be confronted with the witnesses against him. It appears that the judge accompanied the jury on this tour of inspection, and pointed out the different rooms and corridors which the district attorney contended the robbers visited. No evidence was heard.

Wigmore maintains that the Sixth Amendment does not apply to a view of premises. He says: The constitutional sanction of that principle applies solely to testimonial evidence, to "witnesses"; no one supposes that it applies to circumstantial evidence, and no one should suppose that it applies to that third source of proof, namely, autoptic proference, real evidence, or the tribunal's observation of the thing itself. Wigmore, Evidence, § 1803

But if the amendment had application to a view by the jury, then upon authority as well as reason the presence of the defendant on such view may be waived. The law thereon is stated thus in 16 Corpus Juris, § 2069: It is generally held that defendant is entitled to be present when the jury are taken to view the place of the crime, on the ground that this is the taking of evidence and a part of the trial. This right, however, is in the nature of a special privilege which is for the benefit of accused alone, and hence it has been held that it is not essential that he should be present, and that the privilege may be waived expressly by counsel in defendant's presence, or by the failure of the accused to request or to avail himself of the privilege of accompanying the jury, or by refusing to go with the jury.

See, also, Diaz v. United States, 223 U. S. 442, 32 S. Ct. 250, 56 L. Ed. 500, Ann. Cas. 1913C, 1138; Valdez v. United States, 244 U. S. 432, 37 S. Ct. 725, 61 L. Ed. 1242; Grove v. United States (C. C. A.) 3 F.(2d) 965; Price v. United States, 14 App. D. C. 391.

When, after the opening statement by the district attorney, it was proposed to have the jury view the premises, counsel for Kanner said, "We have no objection to that." It was stated by the court that the view would be made in the presence of counsel for government and defense, the marshal, the bailiff, and the defendant, with the officer who looks after him. Thereupon this colloquy between the court and counsel for defense took place:

"Counsel: I do not know just who you limited that to—counsel and the court and the marshal, limited to them?

"The Court: No, and the defendant.

"Counsel: That is, you are according us that privilege, I take it.

"The Court: Yes, I think certainly he is entitled to go if he wishes to go and counsel wishes him to be there.

"Counsel: Well, I think not. No, we are not interested in that; I presume he is not.

"The Court: Then he may stay here.

"Counsel: Yes."

*          *          *          *          *

"Counsel: If the court please, I insist at this time to hear from counsel what they intend to do down there in relation to the various rooms; if it is just a designation of a particular room.

"District Attorney: That is all.

"Counsel: That is all, without any particular remarks.

"District Attorney: We want to designate the mail racks, so as to know what they

are. We do not want any testimony taken about them, or in connection with them, just so with those inanimate objects the jury will know what they are.

"Counsel: No objection.

"The Court: All right, you may proceed."

The transcript then states that "the jury and those designated by the court proceed by the stairway to the basement." Further on the transcript states that the defendant did not accompany the party. It would thus appear from the record that defendant's counsel did accompany the inspection party.

A waiver more complete, definite, and conclusive would be difficult to imagine. Surely no error was committed by the court in failing by force to compel the defendant to accompany the jury upon his distinct refusal to do so.

12. Assignments of error, predicated upon alleged improper remarks of the court and of counsel for the government, are so manifestly without material basis that we refrain from discussing them.

No substantial error appearing, the judgment is affirmed.