## DEVOE v. UNITED STATES.

### No. 11215.

Circuit Court of Appeals, Eighth Circuit.

May 3, 1939.

Rehearing Denied May 22, 1939.

Clyde Taylor, of Kansas City, Mo. (Price Wickersham, of Kansas City, Mo., on the brief), for appellant.

Thomas A. Costolow, Asst. U. S. Atty. of Kansas City, Mo. (Maurice M. Milligan, U. S. Atty., and Randall Wilson, Richard K. Phelps, and Sam C. Blair, Asst. U. S. Attys., all of Kansas City, Mo., on the brief), for the United States.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

Mathew Devoe was tried and convicted under an indictment which charged, in substance, that he, together with Frances S. Ryan, George Stephen Hayde, and the judges and clerks of the election of November 3, 1936, in the Second Precinct of the Twelfth Ward in Kansas City, Missouri, had, on and prior to that day, conspired to injure and oppress certain citizens of the United States, namely, the qualified voters of the precinct who should vote for the Republican candidate for the office of Representative in the Congress of the United States at the General Election held that day, in the rights secured to them by the Constitution and laws of the United States to cast their ballots for such candidate and to have them counted and returned as cast, and that, in furtherance of such conspiracy, the ballots cast by them for such candidate were not counted and were falsely returned by the defendant election officials. Sec. 51, Title 18, U.S.C., 18 U.S.C.A. § 51. From his conviction, Devoe has appealed.

The only defendants who stood trial were the appellant and Frances S. Ryan. The defendant Hayde, the precinct captain for the Pendergast Democratic organization in the Second Precinct of the Twelfth Ward, who had entered a plea of guilty, testified for the Government. It was his testimony which connected Frances Ryan and Devoe with the conspiracy charged, which it is conceded existed and was carried out. Frances Ryan was Democratic Ward Committeewoman and the Ward boss of the Pendergast organization in the Twelfth Ward. Devoe was her assistant, Hayde had been appointed precinct captain by Frances Ryan, and, was, by his own testimony, the person who virtually controlled the conduct of the election in this precinct at the November 3, 1936, election. The ballots cast in that precinct were not counted. Republican candidates were awarded an average of 47 votes in the election returns. The Republican candidate for Congress received in fact 120 votes, while the election returns from the precinct gave him 46 votes. His Democratic opponent was given 605 votes, when in fact he received 515 votes. Hayde testified, in effect, that what was agreed to and what was done in the conduct of the election in this precinct was in direct accord with the instructions of Frances Ryan and Devoe. They were both found guilty by the jury.

The appellant asserts that upon the trial the District Court admitted, over his objection, incompetent and prejudicial evidence tending to show that, in addition to the conspiracy charged, he had been guilty of another conspiracy or other conspiracies violative of the State election laws of Missouri. He also contends that the court, in overruling his motion for a new trial, failed to exercise a proper judicial discretion. The first of these alleged errors is the only one which merits discussion, since the record shows that the court, in denying the appellant's motion for a new trial, did so upon the ground that the verdict of the jury was sustained by the evidence and that the trial was in all respects fair. It is apparent, therefore, that, unless incompetent evidence was admitted to the prejudice of the appellant's substantial rights, his conviction should be affirmed.

Summarizing the testimony of Hayde, the Government's main witness, it was in substance: That he had been the precinct captain of the Second Precinct of the Twelfth Ward for the Pendergast Democratic organization for ten years; that Frances Ryan was the ward boss who named the precinct captains and from whom they received their instructions; that Devoe was her assistant or lieutenant; that, prior to the election, Hayde received instructions from Frances Ryan and Devoe about the registration of voters in September to qualify them for the November election, and was told to pad the registration list in his precinct; that he arranged "to put a pad on the precinct" by bribing a Republican election official of the precinct, named Baldwin (a co-defendant), with the promise of a job, and that Hayde succeeded in getting upon the list about 150 "ghosts

and sleepers";[1] that late in October, 1936, Hayde asked Frances Ryan and Devoe how they were going to handle the precinct with respect to the "ghosts and sleepers" and whether they were going to send people to cast the "ghost and sleeper" vote; that they told him that they were not sending repeaters to the precinct, and that it would be easier to write in the votes for the "ghosts and sleepers"; that on Monday, November 2, there was a general meeting of the precinct captains at the ward head-quarters, at which Frances Ryan told them she wanted them to get out every vote that was on the books; that she then told them to see Devoe in his private office; that Devoe called them in one at a time; that while Hayde and Devoe were in the private office alone, Devoe told Hayde to give the Republican candidates 47 votes, "an average of 47 votes, and to jump them around so it wouldn't look like a straight vote"; that at the election Hayde acted as a challenger in the polling place and "kind of took the lead in handling the precinct"; that the polls were opened regularly; that from time to time during the day he handed to Baldwin and Mrs. Kenmuir, election clerks, lists of "ghosts and sleepers" to be "written in"; that he prepared the ballots for the "ghosts and sleepers", and, with some considerable difficulty, succeeded in stuffing the ballot box with these votes; that the stuffing was completed before the polls were closed; that the votes which had been cast were not counted; that the various Republican candidates were given an average of 47 votes, and their Democratic opponents the balance; that the Republican candidate for Congress was certified to have received 46 votes; that the Democratic candidate was certified to have received 605 votes; that Hayde, after the polls closed, reported to Frances Ryan and Devoe that he had carried out their instructions and had given the Republican candidates an average of 47 votes; that Frances Ryan and Devoe said that was fine, that there had been trouble in some of the precincts and that it had been necessary to give the Republican candidates more votes than they wanted to; that during the day of the election both Frances Ryan and Devoe had visited the precinct and made inquiry of Hayde as to how things were go-

ing; that after the Government started to investigate the conduct of the election in the Second Precinct, Frances Ryan called upon Hayde to come down to see her; that he met her and Devoe, and that they told him that if any "F. B. I. men" came around, not to say anything, and to tell the election judges and clerks to do the same, that bail and lawyers would be furnished, and that if he was convicted an appeal would be taken in the case and the Supreme Court would eventually "throw it out".

The testimony of Hayde as to "putting a pad" on his precinct is corroborated by Baldwin, the Republican election clerk, who assisted him with qualifying and voting the "ghosts and sleepers". Baldwin, however, testified that until the polls closed on election day he was not advised that the ballots cast for the Republican candidates were not to be counted; that after the polls closed Hayde first offered to concede him 33 Republican votes, and that they finally compromised on 47.

Frances Ryan and Devoe denied having any agreement or understanding whatsoever with Hayde with respect to padding the registration list, stuffing the ballot box, not counting the ballots, or the making of false returns. They denied that there had been any meeting between Devoe and Hayde on the day preceding the election, and they produced some thirteen witnesses who testified that there was no meeting of precinct captains at the ward headquarters on Monday, November 2, 1936, and that Hayde was not present at that place on that day.

■ The situation, then, as disclosed by the evidence of the Government, was this: In the Second Precinct of the Twelfth Ward the registration list was padded, the ballot box was stuffed with false and fictitious ballots, the ballots cast were not counted nor returned as cast by the voters either for the Congressional candidates or for the other candidates—all due to a pre-arrangement and a concert of action between Frances Ryan, Devoe, Hayde and the election officials. In so far as the joint action of the defendants was designed to and did deprive the voters of that precinct of their right to an honest count and

---

[1] It seems that in local argot a "ghost" is a nonexistent person for whom a ballot is placed in the ballot box, while a "sleeper" is a voter who is dead or has left the precinct or who, for some other valid reason, will be unable to be present when a vote is cast for him.

to an honest certification of the ballots cast for the Congressional candidates, it was a violation of Sec. 51, Title 18, U.S.C., 18 U.S.C.A. § 51, upon which the indictment was based. In so far as such joint action was designed otherwise to affect the conduct of the election, it was a violation of the election laws of the State of Missouri and was not a conspiracy to deprive individual citizens of rights secured to them by the Constitution and laws of the United States.

The appellant argues that all of the testimony tending to prove that he had anything to do with the padding of the registration list and the stuffing of the ballot box was incompetent, highly prejudicial, and in violation of the rule that one may not be convicted of one crime by proof that he has committed other and disconnected offenses. It is the appellant's theory that it was the duty of the court to exclude all of the evidence relating to the agreement between Hayde and Devoe relative to the padding of the registration list and the other matters which did not directly bear upon the false count and false certification of the ballots. The court was of the opinion that the evidence complained of was admissible for the purpose of showing intent, and in its charge to the jury it so limited the effect of this testimony.

■ ■ It is elementary that in the trial of a case, whether civil or criminal, relevant and competent evidence is admissible even though it tends to prove the commission of criminal acts, not in issue, by the party against whom the evidence is offered. Where evidence of transactions between those charged to have been associated in the commission of a criminal act throws light upon the particular transaction for which they were indicted, it is admissible, regardless of the fact that it tends to implicate the defendants in the commission of other offenses. Kraus v. United States, 8 Cir., 87 F.2d 656, 661; Bruce v. United States, 8 Cir., 73 F.2d 972, 974; Hood v. United States, 8 Cir., 23 F.2d 472, 475; Minner v. United States, 10 Cir., 57 F.2d 506, 510; Suhay v. United States, 10 Cir., 95 F.2d 890, 894, 895. This is true although the crime charged is not conspiracy. Cossack v. United States, 9 Cir., 82 F.2d 214, 216; Kraus v. United States, supra.

[4–6] The vital question in this case is whether the evidence complained of possessed any probative value, and not whether it tended to prove other violations of either State or Federal laws. Stated simply, what the Government was attempting to prove was that the appellant and the other defendants had on and prior to November 3, 1936, jointly undertaken to bring about a false and fictitious count and a false certification of ballots cast for Congressional candidates at the General Election to be held on November 3, 1936, in the Second Precinct of the Twelfth Ward in Kansas City, and had accomplished their purpose. In order to prove its case, the Government offered evidence which, if believed, indicated that Frances Ryan, Devoe and Hayde were associates in an organization which had as its general purpose and object the control of the November 3, 1936, election in the precinct by unlawful means and for the benefit or supposed benefit of the political group to which they belonged; that the means which were to be employed for effectuating the general object which they had in mind included the padding of the registration list, the falsification of ballots, the stuffing of the ballot box, a false and fictitious count, and a false certification by the election officials. The Government's evidence was not at any time directed toward showing the existence of a number of separate and distinct conspiracies, but was directed toward showing one general conspiracy which contemplated in part a false count and a false certification of the ballots cast for the Congressional candidates. So much of the conspiracy as constituted a violation of the Federal law was a part of the general plan or scheme of those engaged in the conspiracy. The contention that the Government should have been limited in its proof to only so much of the evidence as directly bore upon the portion of the conspiracy which constituted the violation of Federal law, is, we think, unsound. The Government was at liberty to prove its case by either direct or circumstantial evidence or by both. It was not required to rely solely upon the direct evidence of Hayde as to his conversation with Devoe in the afternoon of November 2, 1936. The fact that Hayde's testimony as to being told by Devoe in that conversation to give the Republican candidates an average of 47 votes would alone have sustained a conviction, did not preclude the Government from introducing evidence as to other relevant facts and circumstances. Shea v. United States, 6 Cir., 236 F. 97, 103; Johnston v. United States, 9 Cir., 22 F.2d 1, 5. It was within the discretion of the trial court to admit evidence which even re-

motely tended to establish the conspiracy charged. Clune v. United States, 159 U.S. 590, 592, 593, 16 S.Ct. 125, 40 L.Ed. 269; Nee v. United States, 3 Cir., 267 F. 84, 87; United States v. Sebo, 7 Cir., 101 F.2d 889, 891.

We regard the evidence objected to as admissible upon any or all of the following grounds: First. That it tended to characterize the relation of Frances Ryan and Devoe to Hayde and the other defendants.[2] Second. That it cast light upon the prior acquaintance and association between the alleged conspirators.[3] Third. That it tended to show the motive which actuated or might have actuated the defendants to engage in the alleged conspiracy, to disclose their common intent or design, and to indicate that the existence of the conspiracy and the participation in it of Frances Ryan and Devoe was not improbable.[4] Fourth. That it tended to show the general character and the related objects of the joint activities of the defendants.[5] Fifth. That it tended to demonstrate that such a conversation as Hayde testified that he had with Devoe on November 2, 1936, was not improbable.[6] Sixth. That the conspiracy charged was an integral part of a broader conspiracy and so closely related to it that evidence as to the whole scope of the broader conspiracy could legitimately be made the subject of inquiry.[7]

It is our conclusion that the court did not err in receiving the evidence of which the appellant complains.

The judgment is affirmed.

---

[2] Hogan v. United States, 5 Cir., 48 F. 2d 516, 518; Wallace v. United States, 7 Cir., 243 F. 300, 306; Kanner v. United States, 7 Cir., 34 F.2d 863, 866, 867; Bedell v. United States, 8 Cir., 78 F.2d 358, 365.

[3] Hood v. United States, 8 Cir., 23 F. 2d 472, 475; Minner v. United States, 10 Cir., 57 F.2d 506, 510; Bedell v. United States, supra, page 365 of 78 F.2d; Kanner v. United States, supra, pages 866, 867 of 34 F.2d; Heike v. United States, 227 U.S. 131, 145, 33 S.Ct. 226, 57 L.Ed. 450, Ann.Cas.1914C, 128.

[4] Wood v. United States, 16 Pet. 342, 358, 360, 10 L.Ed. 987; Williamson v. United States, 207 U.S. 425, 451, 28 S. Ct. 163, 52 L.Ed. 278; Jelke v. United States, 7 Cir., 255 F. 264, 285, 286; Wallace v. United States, 7 Cir., 243 F. 300, 306; Lefco v. United States, 3 Cir., 74 F.2d 66, 68, 69; Suhay v. United States, 10 Cir., 95 F.2d 890, 894; United States v. Sebo, supra, 101 F.2d 889, 891.

[5] Woodman v. United States, 5 Cir., 30 F.2d 482, 484; Martin v. United States, 5 Cir., 17 F.2d 973, 975; Hogan v. United States, supra, page 518 of 48 F.2d; Greater New York Live Poultry C. of C.

v. United States, 2 Cir., 47 F.2d 156, 159.

[6] Kanner v. United States, 7 Cir., 34 F. 2d 863, 866. Compare H. F. Wilcox Oil & Gas Co. v. Skidmore, 8 Cir., 72 F.2d 748, 753.

[7] Jelke v. United States, supra, page 284 of 255 F.; Holmes v. Goldsmith, 147 U.S. 150, 164, 13 S.Ct. 288, 37 L.Ed. 118; Moore v. United States, 150 U.S. 57, 60, 61, 14 S.Ct. 26, 37 L.Ed. 996; Williamson v. United States, 207 U.S. 425, 451, 28 S. Ct. 163, 52 L.Ed. 278; Hood v. United States, supra, page 475 of 23 F.2d; Heike v. United States, supra, page 145 of 227 U.S., 33 S.Ct. 226, 57 L.Ed. 450, Ann.Cas.1914C, 128; Hogan v. United States, supra, page 518 of 48 F.2d; Caldwell v. United States, 10 Cir., 36 F.2d 742, 744, 745; Cravens v. United States, 8 Cir., 62 F.2d 261, 273; Nee v. United States, 3 Cir., 267 F. 84, 88; United States v. Pleva, 2 Cir., 66 F.2d 529, 531; Walker v. United States, 8 Cir., 93 F.2d 383, 394; Bruce v. United States, supra, page 974 of 73 F.2d; Greater New York Live Poultry C. of C. v. United States, supra, page 159 of 47 F.2d; United States v. Sebo, supra, page 891 of 101 F. 2d.